**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MICHAEL GIVENS, )
                        Petitioner, )
                                        )
     vs.                           ) Civil Action No. 12-365
                                        ) Magistrate Judge Maureen P. Kelly
THE ATTORNEY GENERAL OF THE )
STATE OF PENNSYLVANIA Debra )
Kelly; MARIROSA LAMAS; THE )
DISTRICT ATTORNEY OF THE )
COUNTY OF ALLEGHENY; DANIEL )
EDWARD FITZSIMMONS, )
                       Respondents. )

## <u>MEMORANDUM OPINION</u>

On May 4, 2000, Michael Givens ("Petitioner"), was convicted by a jury of first-degree murder in the shooting death of a teenager and related charges.   As a consequence, on June 19, 2000, Petitioner was sentenced to life in prison without the possibility of parole for the conviction of first-degree murder, 5 to 10 years consecutive imprisonment for the charge of criminal conspiracy and 3 ½ to 7 years for the conviction of carrying a firearm without a license. Waiting nearly twelve years, Petitioner now seeks federal habeas relief through a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"). Petitioner admits that the Petition is untimely but claims his violation of the statute of limitations should be overlooked because he is innocent.   Because all but one of his claims are time-barred, and because Petitioner has failed to carry his burden to show that he is actually innocent, the Petition will be denied as time-barred.

## I. FACTUAL BACKGROUND

Given that we write primarily for the parties who are well acquainted with the facts of the crimes and the testimony at Petitioner's trial, we forego a lengthy recitation herein. A summary of the facts underlying the crimes is provided in the opinion of the Court of Common Pleas on direct appeal, ECF No. 9-4 at 37 to 39, as well as in the opinion of the Pennsylvania Superior Court on direct appeal. ECF No. 9-3 at 35 to 38.

Suffice it to say that Petitioner and his step-brother and co-defendant, Curtis Johnson ("Johnson"), were tried together. The Commonwealth's theory of the case was that Johnson shot the 16 year old victim and that Petitioner was either a co-conspirator or an accomplice. The evidence showed that, shortly before the shooting, Petitioner and Johnson were together in a car, close to where the shooting occurred. Seconds before the shooting, Petitioner, now alone in the car, stopped and spoke with the 16 year old victim and the victim's friends. Perhaps, the most damaging testimony came from Theodore Rogers and, his 15 year old daughter, Patrice Rogers. Petitioner was staying at their home. They testified that, on the night of the shooting, Petitioner and Johnson came running into the Rogers' home, shortly after the time of the shooting. Petitioner and Johnson proceeded directly to the basement where Johnson washed his hands with bleach and Petitioner and Johnson changed their clothes. After cleaning up, Petitioner told the Rogers that Johnson had just shot "Ric" which was the name of the 16 year old victim and, Petitioner pointed to an area on his cheek just below the eye, indicating where Johnson shot the victim. Indeed, the 16 year old victim had been shot in the face. See ECF No. 3 at 34; State Court Record, Notes of Testimony, Vol. II, at 69 to 70 (testimony of Theodore Rogers). Johnson remained silent. Theodore Rogers contacted the police the following day and provided

this information.

The gun used by Johnson to shoot the victim had belonged to Petitioner prior to the crime. This evidence lead the Superior Court to note that "the gun used in the shooting was the same gun which Appellant [*i.e.*, Petitioner] habitually carried, giving rise to the inference that Appellant provided Johnson with the weapon used in the murder." ECF No. 9-3 at 38.

## II. RELEVANT PROCEDURAL HISTORY

Petitioner was convicted on May 4, 2000 and was sentenced by the Honorable Donna Jo McDaniel on June 19, 2000. His counsel filed an appeal and the Superior Court affirmed. His counsel then filed a Petition for Allowance of Appeal which the Pennsylvania Supreme Court denied on December 27, 2002. Petitioner did not file a Petition for Writ of Certiorari with the United States Supreme Court.

On November 30, 2003, Petitioner signed his first pro se Post Conviction Relief Act ("PCRA") petition. Counsel was appointed by Judge McDaniel and counsel filed a no-merit brief and a motion to withdraw. The PCRA Court denied PCRA relief and granted counsel's motion to withdraw. Petitioner filed a pro se notice of appeal to the Pennsylvania Superior Court. Petitioner failed to file a brief in the Pennsylvania Superior Court. As a result, on March 15, 2005, the Superior Court dismissed the appeal for failure to file a brief.

More than five years later, on April 26, 2010, Petitioner executed and, pursuant to the prisoner mail box rule, is deemed to have filed a second pro se PCRA petition, ECF No. 9-7 at 10. In this second PCRA petition, he alleged after-discovered evidence in the form of an affidavit from co-defendant Johnson (the "Johnson Affidavit") asserting that Petitioner had no knowledge of Johnson's shooting of the 16 year old victim. Judge McDaniel found the Johnson

Affidavit insufficient under Pennsylvania law to come within the one year statute of limitations

for filing PCRA petitions.   ECF No. 9-8 at 2 to 7.   Petitioner filed a pro se appeal to the

Superior Court, which, on April 8, 2011, affirmed the untimeliness of the second PCRA petition.

 ECF No. 9-9 at 23 to 34.   In doing so, the Superior Court recognized that:

> [t]he fact that this statement was given by a convicted co-defendant in this
> crime who only made the statement after he had been sentenced for his
> participation and therefore had nothing to lose by attempting to aid the cause of
> his co-conspirator raises a significant question as to its reliability.   We have long
> recognized that post-verdict accomplice testimony must be viewed with a
> jaundiced eye.

ECF No. 9-9 at 31.   Petitioner did not thereafter file a Petition for Allowance of Appeal

to the Pennsylvania Supreme Court.

Petitioner waited nearly a year after the Superior Court affirmed the denial of the second

PCRA petition to sign the present Petition on March 22, 2012, the same date he placed the

Petition into the prison mail system.   ECF No. 6 at 14 to 15.   The Petition was on the

pre-printed form provided at one time by the Clerk's Office.   In the Petition, Petitioner raised

four grounds in support of his request for habeas relief:

> GROUND ONE:   Conviction is the result of a miscarriage of justice, and
> Petitioner is actually innocent of the victim's murder.

> GROUND TWO:   Conviction obtained in violation of the Sixth
> Amendment's Right to Effective Assistance of Counsel.

> GROUND THREE:   Conviction obtained in violation of the Fourteenth
> Amendment's Right to Due Process.

> GROUND FOUR: Conviction obtained in violation of the Sixth
> Amendment's Right to Confrontation.

ECF No. 6 at 5 to 10.   Accompanying the Petition was an attachment in which Petitioner

expounded upon these four grounds. ECF No. 6-1.

In response to the question on the pre-printed form as to the timeliness of the Petition, Petitioner wrote:   "[t]his Petition is being brough[t] before the Court on claims of Actual Innocence, and a miscarriage of justice, which if the threshold standard of which is met, would allow the Court to entertain this Petition."   ECF No. 6 at 13.

Petitioner also filed a Memorandum of Law in Support of Petition for Writ of Habeas Corpus.   ECF No. 3.

The Respondents filed a Motion to Dismiss the Petition for Writ of Habeas Corpus (the "Motion to Dismiss"), asserting that the Petition is time-barred.   ECF No. 9.   After being granted an extension of time in which to do so, Petitioner filed his Response to the Motion to Dismiss.   ECF No. 14.

All parties have consented to have the Magistrate Judge exercise plenary jurisdiction. ECF No. 10 (Consent filed by the District Attorney on behalf of the Respondents) and ECF No. 12 (Consent of Petitioner).

## III. APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) ("AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996.   Because Petitioner's Petition was filed after its effective date, AEDPA is applicable to this case.   Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Respondents pointed out in their Motion to Dismiss that this Petition is untimely under the AEDPA.   The AEDPA requires that state prisoners file their federal habeas petition within

5

one year after their conviction became final.   Specifically, the AEDPA provides that:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of--
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>      (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>           (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>     (2) The time during which a properly filed application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

A respondent to a habeas petition has the burden of affirmatively pleading the AEDPA's statute of limitations.  Hill v. Braxton, 277 F.3d 701, 705 (4th Cir. 2002).   However, it is appropriate -where the habeas petitioner has been put on notice of a statute of limitations defense- to place some burden on him or her to show why the petition is not untimely. See, e.g., Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002) ("once a petitioner is given adequate notice and opportunity to respond to allegations that his petition is subject to dismissal pursuant to AEDPA's statute of limitations, petitioner has the burden of providing an adequate response"), *abrogation on other grounds recognized in*, Moreno v. Harrison, 245 F. App'x 606 (9th Cir.

2007).   See also Jackson v. Secretary for Dept. of Corrections, 292 F.3d 1347, 1349 (11th Cir.

2002); Robinson v. Johnson, 313 F.3d 128, 134 (3d Cir. 2002)("The purpose of requiring the

defendant to plead available affirmative defenses in his answer is to avoid surprise and undue

prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the

affirmative defense should not succeed.").

## IV. DISCUSSION

### A.   All claims, other than the actual innocence claim, based on the April 14, 2010 Johnson Affidavit, are clearly time-barred.

Petitioner's conviction became final 90 days after December 27, 2002, which is the date

on which the Pennsylvania Supreme Court denied the counseled Petition for Allowance of

Appeal in his direct appeal from his conviction. ECF No. 9 at 4.   See United States Supreme

Court Rule 13 (providing that a petition for certiorari must be filed no later than 90 days after

entry of an order denying discretionary review by the state court of last resort); Stokes v. District

Attorney of Philadelphia, 247 F.3d 539, 542 (3d Cir. 2001)(explaining that the AEDPA's phrase

"became final by ... expiration of time for seeking [direct] ... review" includes the 90 day time

period in which to seek certiorari); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999). In

counting this 90 day time period, the Court follows Fed.R.Civ.P. 6,[1]  and concludes that

---

[1]   Fed.R.Civ.P. 6 provides in relevant part that

> In computing any period of time prescribed or allowed by these rules, by the local
> rules of any district court, by order of court, or by any applicable statute, the day
> of the act, event, or default from which the designated period of time begins to run
> shall not be included. The last day of the period so computed shall be included,
> unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is
> the filing of a paper in court, a day on which weather or other conditions have
> made the office of the clerk of the district court inaccessible, in which event the

(footnote continued . . .)

Petitioner's conviction became final on March 27, 2003.   Hence, the AEDPA's one year[2] statute

of limitations began to run from March 27, 2003 and continued to run until November 29, 2003,

which was the day before Petitioner signed his first pro se PCRA petition. ECF No. 9-5 at 7.[3]

Again utilizing Fed.R.Civ.P. 6, the Court calculates that from March 27, 2003 (the date on which

his conviction became final) to November 29, 2003 (the last countable date before Petitioner

filed his first pro se PCRA Petition), a total of two-hundred-and–forty-seven (247) days from the

365 days limit ran.   Consequently, Petitioner had only 118 days remaining of the AEDPA

limitations period.   That first PCRA petition continued to be pending only for thirty days after

March 15, 2005.   On March 15, 2005, the Superior Court dismissed Petitioner's appeal of the

PCRA trial court's order denying Petitioner relief.   The Superior Court did so because after his

PCRA trial counsel had been permitted to withdraw, Petitioner failed to file a pro se appellate

brief in the Superior Court. Under Pennsylvania law, Petitioner had only thirty days in which to

file a Petition for Allowance of Appeal to the Pennsylvania Supreme Court. Mattis v. Klopotoski,

_____

period runs until the end of the next day which is not one of the aforementioned
days.

[2]  For purposes of the AEDPA's one year statute of limitations, a "year" means 365 days.   See
Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir. 2001); Stokes v. Miller, 216 F.Supp.2d 169
(S.D.N.Y. 2000).

[3]   Although, pursuant to Fed. R. Civ. P. 6, the last day of a time period is to be counted,
November 30, 2003 is not to be counted here because, on that date, Petitioner is deemed to have
filed his PCRA petition, pursuant to the Prisoner Mail Box Rule, and thus as of that date
AEDPA's statute of limitations is tolled, i.e., did not run due to the fact that Petitioner had a
petition for post conviction relief "pending" for at least a portion of November 30, 2003, within
the meaning of 28 U.S.C. § 2244(d)(2).   See Freeman v. Pew, 59 F.2d 1037, 1037 (D.C. Cir.
1932) ("it has long been the settled doctrine that the law, disregarding fractions, takes the entire
day as the unit of time.");   In re Susquehanna Chemical Corp., 81 F.Supp. 1, 9 (W.D. Pa. 1948)
(general rule is that fractions of a day are to be disregarded), aff'd, 174 F.2d 783 (3d Cir. 1949).

Civ.A. 07-1837, 2008 WL 2909859, at * 3 (E.D.Pa., July 28, 2008)("That petition remained pending until December 8, 2006, when the time expired for Mattis to seek review in the Pennsylvania Supreme Court. *See* Pa. R.A.P. 1113(a) (allowing 30 days for the filing of an allocatur petition); *Swartz v. Meyers*, 204 F.3d 417, 421-22 (3d Cir. 2000) (state collateral petition is pending through the time for seeking an appeal)."); Young v. Lawler, CIV.A. 07-4171, 2008 WL 1984059, at *4 (E.D.Pa. May 2, 2008) (the 30 day period for filing allocatur to Pennsylvania Supreme Court tolled the running of the AEDPA's statute of limitations even if no allocatur petition was filed). Thirty days after March 15, 2005 is April 14, 2005. Hence, as of April 15, 2005, Petitioner no longer had a PCRA petition pending, and the AEDPA's statute of limitations began to run again and continued to run until it ran out when the remaining 118 days out of the 365 were used up on July 14, 2005. As of July 14, 2005, Petitioner's 365 day statute of limitations to bring a habeas claim ran out. Hence, as to all the claims raised in the Petition,[4] other than Ground One which is the sole claim based on the allegedly newly discovered Johnson Affidavit, the present Petition is clearly time-barred and we will not address those claims. Munchinski v. Wilson, 694 F.3d 308, 327 (3d Cir. 2012) (the AEDPA's statute of limitations must be applied on a claim by claim basis).

---

[4]     A quick comparison of the issues Petitioner raises in the present proceedings in this Court, ECF No. 3 at 2 to 3, when compared to the issues raised in Petitioner's appeal of his first PCRA Petition, ECF No. 9 at 4 to 5, confirms that there is substantial overlap in the issues and that all the issues (other than the claims based on the Johnson Affidavit) raised in Petitioner's current Petition in this Court were available to him as early as the time he filed his first PCRA Petition, if not earlier, *e.g.*, Petitioner's claim here that the trial court violated his due process rights by denying his request for a continuance of the trial and his rights to confrontation by admitting Johnson's confession. ECF No. 3 at 3, Ground III, Issue C and Ground IV.

**B. The "newly discovered" evidence and claim of actual innocence.**

In Ground One of the Petition, Petitioner raises a claim of actual innocence based on allegedly newly discovered evidence.   He points to two pieces of evidence as being newly discovered.   First, Petitioner relied on the Johnson Affidavit, dated April 14, 2010, which he presented to the state courts in the course of his second PCRA proceedings.   ECF No. 3 at 9. Second, Petitioner appears to rely upon letters allegedly from Patrice Rogers, indicating her desire to recant her trial testimony, which Petitioner did not present in the PCRA proceedings. ECF No. 6-1 at 6.

**1. The AEDPA bars consideration of the letters from Patrice Rogers.**

Given the strictures under the AEDPA, we are barred from considering evidence not presented to the state courts but adduced for the first time in a federal habeas proceeding via merely attaching such evidence to the Petition.   The AEDPA bars this Court from considering these late produced letters supposedly written by Patrice Rogers wherein she allegedly expresses a desire to recant her trial testimony because Petitioner failed to adduce these letters in the PCRA proceedings which means that Petitioner failed to develop in the state courts this particular factual underpinning of his actual innocence claim.   See e.g., 28 U.S.C. § 2254 (e)(2).[5] Williams

---

[5] The AEDPA provides that

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
> > (A) the claim relies on--
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > > (ii) a factual predicate that could not have been

> (footnote continued . . .)

v. Taylor, 529 U.S. 420, 437 (2000) ("Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."); Breakiron v. Horn, No. Civ. A. 00-300, 2008 WL 4412057, at *13 (W.D.Pa. Sept. 24, 2008), *rev'd in part on other grounds*, 642 F.3d 126 (3d Cir. 2008). As explained by a District Judge of this Court:

> Because he [i.e., the death sentenced habeas petitioner] never presented these "new" articles [allegedly showing prejudicial news coverage in order to support a jury pool taint theory thereby requiring a change of venue] to the state courts, they are not part of the state court record and this court may not consider them in reviewing this claim. The United States Supreme Court "ha[s] made clear that whether a state court's decision was unreasonable must be assessed in light of the record the [state] court had before it." *Holland v. Jackson*, 542 U.S. 649, 652

---

> previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

See also Boyko v. Parke, 259 F.3d 781, 789-90 (7th Cir. 2001) wherein the Court explained as follows:

> A federal court's ability to hold an evidentiary hearing in order to supplement the record when the petitioner "has failed to develop the factual basis of a claim in State court proceedings" is severely circumscribed. 28 U.S.C. § 2254(e)(2). . . . We recognize that Mr. Boyko has not yet asked the district court to hold an evidentiary hearing; instead, he seeks permission to conduct discovery and to expand the record. These procedural devices, however, can be used to introduce new factual information into the record in lieu of an evidentiary hearing. *See, e.g., Brown v. Johnson*, 224 F.3d 461, 469 (5th Cir. 2000) (stating that expansion of the record can be used as a "paper hearing" in place of an evidentiary hearing). When expansion of the record is used to achieve the same end as an evidentiary hearing, the petitioner ought to be subject to the same constraints that would be imposed if he had sought an evidentiary hearing. *See McNair v. Haley*, 97 F.Supp.2d 1270, 1286 (M.D.Ala.2000) ("The petitioner cannot use Rule 7 [of the Rules Governing § 2254 cases, which allows expansion of the record] to secure the benefits that only subdivision (e)(2) [of § 2254] can bestow.").

(2004) ( per curiam ) (*citing Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ( per curiam ) (denying relief where state court's application of federal law was "supported by the record"); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003) (reasonableness of state court's finding assessed "in light of the record before the court"); *Bell*, 535 U.S. at 697 n. 4 (declining to consider evidence not presented to state court in determining whether its decision satisfied § 2254(d)'s standard of review)); *see also Taylor*, 504 F.3d at 436-37, 439 n. 19 (petitioner not entitled to introduce new evidence in federal habeas proceeding when he had the opportunity to present that evidence when he was litigating the claim at issue in state court).

Breakiron v. Horn, 2008 WL 4412057, at *13.   What the court stated in Breakiron is equally applicable here.   The AEDPA makes clear that, whatever the practice prior to enactment of the AEDPA, federal habeas courts ought to refrain from finding that state court proceedings resulted in a constitutional violation, requiring the grant of habeas relief where the factual predicate of such a finding was not presented to the state courts.   Instead, federal courts must give the state courts the first opportunity to consider such factual predicate.   Accordingly, because Petitioner failed to present the letters allegedly from Patrice Rogers to the state courts, we will not consider the alleged letters from Patrice Rogers.

## 2. The Johnson Affidavit.

As to the April 14, 2010, Johnson Affidavit that purports to exonerate Petitioner, it is not entirely clear what Petitioner is arguing because he appears to argue different things in different places in his Petition and other filings.   First, Petitioner appears to argue that because he is actually innocent, we should "forgive" the procedural default of his other claims in state court and address those other claims on the merits.[6]   Second, Petitioner appears to argue that because

---

[6]   Petitioner argues that "the Petitioner dose [sic] not argue that his constitutional issues raises in his habea[s] petition have not been procedurally defaulted.   But instead argues that he is actually innocent[]of the crimes charged, and a fundamental miscarriage of justice has occurred, and the ends of justice would require his being allowed to pass through the gat[e]way to have his

(footnote continued . . .)

he is actually innocent, we should equitably toll the AEDPA statute of limitations for his other claims that are clearly time-barred.[7]   We will consider both of these arguments as a "gateway claim" of actual innocence, meaning that Petitioner's actual innocence is not itself a ground for relief (i.e., give me habeas relief because I am actually innocent) but is really a procedural gate that permits the court to address his other claims (which are either procedurally defaulted and/or time-barred) on the merits.   The third argument is a so-called free standing claim of actual innocence, i.e., because I am actually innocent, for that reason alone, I am entitled to federal habeas relief.   See, e.g., ECF No. 6 at 5 (listing as Ground One that "Conviction is the result of a miscarriage of justice, and Petitioner is actually innocent of the victim[']s murder.").   Fourth, Petitioner also appears to argue that his claim of actual innocence is timely under the 28 U.S.C. § 2244(d)(1)(D) of the AEDPA's statute of limitations, i.e., he brought his claim of actual innocence within one year of his discovery of the factual predicate of his claim, which was the discovery of the Johnson Affidavit purportedly exonerating Petitioner of involvement in the death of the victim.   ECF No. 3 at 8 to 9.

---

constitutional claims decided on there [sic] merits."   ECF No. 14 at 3.

[7]   Petitioner argued:

> As the Commonwealth itself points out "Courts in this circuit have assumed that [a] successful actual innocence claim can sati[s]fy the [']extraordinary circumstances['] requirement and justify equitable tolling, provided the Petitioner meets the diligence requirement" . . ." [sic] (Motion at 20). Petitioner argues that it was only through his continued diligence since his conviction and incarceration, while in prison working on his own to gather and present this evidence to the court.

ECF No. 14 at 4.   See also ECF No. 14 at 8 ("Petitioner dose [sic] demonstrate that he has new reliable evidence of his innocence, and pursued that evidence with extreme due

(footnote continued . . .)

### a. The "gateway claim" of actual innocence.

We construe the first two arguments to be gateway claims of actual innocence, and, as such, we will address them together. Petitioner invokes the "actual innocence" standard of Schlup v. Delo, 513 U.S. 298, 327 (1995). United States v. Sorrells, 145 F.3d 744, 749 n.3 (5th Cir. 1998)("The 'actually innocent' standard is the same as the 'fundamental miscarriage of justice' standard, which applies 'when a constitutional violation probably has caused the conviction of one innocent of the crime.'"). "Actually innocent" means factual innocence and not just legal innocence. See Calderon v. Thompson, 523 U.S. 538, 559 (1998) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.").

In order to make a showing of "actual innocence," a petitioner "must satisfy a two-part test in order to obtain review of otherwise procedurally barred claims. First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial. *Schlup*, 513 U.S. at 327-28. Second, the petitioner must establish 'that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.' *Id.* at 327." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001), *cert. denied*, 534 U.S. 963 (2001). It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that. In Schlup, the United States Supreme Court reiterated that "[t]he meaning of actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." Schlup, 513 U.S. at 329.

Because of the focus being on establishing actual innocence as opposed to legal

---

diligence, which would allow for equitable tolling in this case.").

innocence, the Court is not bound to consider only the evidence introduced at a habeas

petitioner's criminal trial.    As the United States Supreme Court in <u>Schlup v. Delo</u>, 513 U.S. at

327 - 28, explained: "[i]n assessing the adequacy of petitioner's showing [of actual innocence],

therefore, the district court is not bound by the rules of admissibility that would govern at trial.

Instead, the emphasis on 'actual innocence' allows the reviewing [habeas] tribunal also to

consider the probative force of relevant evidence that was either excluded or unavailable at trial."

Indeed, the Supreme Court explained more fully what it meant by allowing a court to consider

evidence not heard at trial when it declared that:

> The habeas court must make its determination concerning the petitioner's
> innocence "in light of all the evidence, including that alleged to have been
> illegally admitted (but with due regard to any unreliability of it) and evidence
> tenably claimed to have been wrongly excluded or to have become available only
> after the trial."

<u>Id</u>. at 328.   Moreover, when assessing the "new evidence", the district court is permitted to

consider its likely credibility to a juror.   <u>Id</u>. at 331 - 332 ("the District Court must assess the

probative force of the newly presented evidence in connection with the evidence of guilt adduced

at trial. Obviously, the Court is not required to test the new evidence by a standard appropriate

for deciding a motion for summary judgment. . . . Instead, the court may consider how the timing

of the submission and the likely credibility of the affiants bear on the probable reliability of that

evidence.").

The Supreme Court further explained the role of the district court in performing the

"actual innocence" analysis.   The Supreme Court explained that:

> [i]t is not the district court's independent judgment as to whether reasonable doubt
> exists that the standard addresses; rather the standard requires the district court to
> make a probabilistic determination about what reasonable, properly instructed

jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

Id., at 329.

The first prong of the two part test, *i.e.*, whether the proffered evidence is new, provides that "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d at 1028. For purposes of this analysis, we will assume without deciding that the Johnson Affidavit meets this first part of the two part analysis.

As to the second part of the analysis, Petitioner has failed to carry his burden to show that no reasonable juror in light of the new evidence would have found Petitioner guilty. First, the testimony of Theodore Rogers and Patrice Rogers at trial, describing what transpired in their home immediately after the shooting, regarding Johnson and Petitioner coming in and heading straight to the basement, washing, changing clothes and, Petitioner's statement that Johnson shot Ric, when, considered together with the ballistic evidence that the gun used to kill the victim was the gun that Petitioner carried with him frequently is, indeed, very inculpatory evidence when one considers that there was no motive for Theodore and Patrice Rogers to lie. This is true notwithstanding Petitioner's claim that Theodore Rogers was in financial difficulties and was going to get money, enter a witness protection program and be relocated due to his testifying at Petitioner's trial. We note that this basis for impeaching the testimony of Theodore Rogers was brought out during Petitioner's trial by defense counsel. As such, the jury obviously discounted this evidence as they apparently credited the testimony of Theodore and Patrice Rogers and found Petitioner guilty.

When comparing this evidence with the recent Johnson Affidavit, authored by Petitioner's step-brother and co-defendant, who now has every reason to lie to protect or exonerate his step brother, and mindful of the Supreme Court's admonition that district courts may take into account "the timing of the submission and the likely credibility of the affiants" in making the probabilistic determination of what a reasonable juror would do, we agree with the Superior Court's observation concerning this evidence: "[t]he fact that this statement was given by a convicted co-defendant in this crime who only made the statement after he had been sentenced for his participation and therefore had nothing to lose by attempting to aid the cause of his co-conspirator raises a significant question as to its reliability." ECF No. 9-9 at 31. Considering the questionable credibility of the Johnson Affidavit, we conclude that Petitioner has not carried his burden. Petitioner has not convinced this Court that, in light of the Johnson Affidavit, no reasonable juror would have found Petitioner guilty.

Because Petitioner has failed to establish his actual innocence, we will not forgive any procedural default of his claims in state court, nor will we equitably toll the AEDPA statute of limitations for his time-barred claims. Nelson v. Superintendent of SCI-Huntingdon, Civ.A. No. 07-1453, 2009 WL 918097, at *5-*6 (W.D.Pa. Apr. 2, 2009) ("the standards for making a showing of such actual innocence [so as to equitably toll the AEDPA statute of limitations] should be at least as stringent as the standards under *Schlup* . . . for excusing a procedural default").

**b. The free standing claim of actual innocence.**

In addition to the gateway claim of actual innocence pursuant to Schlup, Petitioner appears to also make a freestanding claim, similar to that made in Herrera v. Collins, 506 U.S.

390 (1993), that he is actually innocent and therefore, on that ground alone, quite apart from any errors that may have occurred in his criminal proceedings, he should be granted habeas relief, essentially implying that it is constitutionally intolerable for an actually innocent person to be convicted.   There are at least two substantial flaws in Petitioner's argument.

### (1) A free standing claim of actual innocence has never been recognized as a claim cognizable in federal habeas proceedings outside the capital punishment context.

Petitioner claims that he is entitled to habeas relief because he has produced new evidence of his actual innocence.   Importantly, when he presented this same claim to the state court in his second PCRA motion, he raised it under a provision of the PCRA that does not have a counterpart in the federal habeas statute.   Petitioner raised this claim under 42 Pa.C.S. § 9543(a)(2)(vi), which provides that a prisoner is entitled to PCRA relief if he proves that his conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced."   See also Albrecht v. Horn, 485 F.3d 103, 123 (3d Cir. 2007) (describing this provision of the PCRA as "the provision of the state post-conviction relief act dealing with claims of innocence based on after discovered evidence.").   In contrast, while a credible claim of actual innocence can act as a "gateway" through which a federal habeas petitioner may pass to have an otherwise procedurally barred constitutional claim considered on the merits, see Schlup v. Delo, 513 U.S. 298 (1995), a free standing claim of actual innocence must be denied because it is not cognizable in federal habeas.   Albrecht, 485 F.3d at 121-22, citing Herrera v. Collins, 506 U.S. 390 (1993).

In Herrera, the United States Supreme Court held that federal habeas review is not available "absent an independent constitutional violation occurring in the underlying state criminal proceeding," and that "a claim of 'actual innocence' is not itself a constitutional claim." 506 U.S. at 400, 404.   The Supreme Court explained that once a defendant is found guilty after a fair trial in the state court, he no longer is entitled to a presumption of innocence, and thus comes before the federal habeas court not as one who is innocent, but as a convicted criminal.   Id. at 399-400.   Because such a determination in the state criminal trial is "a decisive and portentous event" and "[s]ociety's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the guilt or innocence of one of its citizens," freestanding claims of actual innocence are not reviewable in federal habeas actions.   Id. at 401 (internal quotations and citations omitted).   The Supreme Court noted that "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact."   Id. at 400.   "Federal courts are not forums in which to relitigate state trials."   Id. at 401 (quotations and citation omitted).   Thus, the Court rejected Herrera's claim that, even if the proceedings that resulted in his conviction and sentence were entirely fair and error free, his innocence would make his execution a constitutionally intolerable event.

Based upon the Herrera decision, the United States Court of Appeals for the Third Circuit Court has repeatedly emphasized that in non-capital cases such as this case:   "It has long been recognized that '[c]laims of actual innocence based on newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'"   Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004) (quoting Herrera, 506 U.S. at 400); Albrecht, 485 F.3d

at 121-22.   Thus, Petitioner's free standing claim of actual innocence is not cognizable under the

federal habeas corpus statute.[8]

> **(2) Even if Petitioner's actual innocence claim were cognizable in federal habeas proceedings outside the capital punishment area, he has failed to carry his burden to show that he is "actually innocent" for purposes of establishing such a free standing claim.**

Free standing claims of actual innocence, as opposed to gateway claims pursuant to

Schlup, have been addressed previously by the Supreme Court.   See, e.g., Herrera v. Collins,

506 U.S. 390 (1993). The burden of showing actual innocence in order to make out a

freestanding claim of actual innocence is heavier and higher than the burden to make out a

gateway claim of actual innocence within the meaning of Schlup.   Hence, this Court's

conclusion above that Petitioner did not meet the lesser gateway standard under Schlup v. Delo,

resolves the free standing claim of innocence under the more stringent standard of Herrera.   See

Schlup v. Delo, 513 U.S. at 316-317; Thomas v. Taylor, 170 F.3d 466, 473 (4th Cir. 1999)

("Regardless of whether we apply the more lenient standard of *Schlup* or the stricter standard of

*Herrera* . . .");   Parham v. Kelm, __ F. App'x __, _, 2012 WL 4040285 (3d Cir. 2012) ("a

---

[8]   In Herrera, the Supreme Court left open the possibility that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there was no state avenue open to process such a claim."   506 U.S. at 417.   In House v. Bell, 547 U.S. 518 (2006), the Supreme Court once again left open the question of whether a truly persuasive freestanding innocence claim in a capital case would warrant federal habeas relief if no state avenues of relief remain available. Id.   In District Attorney's Office for the Third Judicial District v. Osborne, 557 U.S. 52 (2009), which was a non-capital case in which a state inmate brought an action under 42 U.S.C. § 1983 to compel the State of Alaska to release biological evidence so that it could be subject to DNA testing, the Supreme Court, in dicta, assumed without deciding that an actual innocence claim could be brought in habeas, but noted "the high standard any claimant would have to meet" to succeed with such a claim.   Id. at 71, citing House and Herrera.

petitioner carries a heavier burden to succeed on substantive [*i.e.*, free standing] claim of actual innocence than the already high burden imposed by a gateway claim.").   Accordingly, Petitioner has failed to sustain his burden to establish a gateway claim of actual innocence pursuant to <u>Schlup</u> and *a fortiori*, has failed to sustain his burden to establish a free standing claim of actual innocence under <u>Herrera</u>.

Finally, we briefly address Petitioner's last argument (which is related to his free standing actual innocence claim) that his actual innocence claim is timely because it was brought within one year of his discovery of the factual predicate of his claim, *i.e.*, within one year of the April 14, 2010 Johnson Affidavit.   We reiterate that the AEDPA's statute of limitations must be applied on a claim by claim basis. <u>Munchinski v. Wilson</u>, 694 F.3d at 327. Hence, as to the timeliness issue, the only "claim" this argument for timeliness applies to is Petitioner's free standing claim of actual innocence, which we already held was not cognizable or, in the alternative, even if cognizable, was not meritorious.

In light of the conclusion about Petitioner's failure to establish his actual innocence under either the <u>Schlup</u> standard or the <u>Herrera</u> standard, it is unnecessary for us to determine whether this free standing claim is timely or not because, even if timely, it is not a claim that can provide any relief to Petitioner.

**V.   CONCLUSION**

For the foregoing reasons, the Petition is denied and the Motion to Dismiss filed by the Respondents, ECF No. 9, is granted.   Moreover, because we conclude that jurists of reason would not find the foregoing debatable, we deny a Certificate of Appealability.

**Petitioner is advised that he has the right for thirty (30) days to file a notice of**

appeal from our order denying his petition, <u>see</u> 28 U.S.C. § 2253(a); Fed. R.App. P.

4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from

doing so, as long as he also seeks a certificate of appealability from the Court of Appeals.

<u>See</u> Federal Rule of Appellate Procedure 22(b)(1). Petitioner must file his notice of appeal

as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District

Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY THE COURT:

s/Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated:   March 18, 2013

cc:     MICHAEL GIVENS
        EG-5847
        S.C.I. Rockview
        P.O. Box A
        Bellefonte, PA 16823-082

        All counsel of record via CM-ECF